**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 18 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILDEARTH GUARDIANS; WESTERN WATERSHEDS PROJECT; WILDERNESS WATCH; FRIENDS OF THE CLEARWATER,<br><br>    Plaintiffs-Appellants,<br><br>v.<br><br>UNITED STATES FOREST SERVICE; UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>    Defendants-Appellees,<br><br>STATE OF WYOMING; IDAHO FISH AND GAME COMMISSION,<br><br>    Intervenor-Defendants-Appellees. | No. 23-35352<br><br>D.C. No. 1:19-cv-00203-CWD<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Idaho
Candy W. Dale, Magistrate Judge, Presiding

Argued and Submitted May 22, 2024
Anchorage, Alaska

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1

Before: BYBEE, FRIEDLAND, and MILLER, Circuit Judges.

This case involves regulation of the use of bait in hunting as it impacts grizzly bears inhabiting the national forests in Idaho and Wyoming. Plaintiffs are a group of environmental organizations; defendants are the U.S. Forest Service ("Forest Service"), the U.S. Fish and Wildlife Service ("FWS" and, together with the Forest Service, the "Federal Defendants"), the Idaho Fish and Gaming Commission, and the State of Wyoming. We assume familiarity with the facts and applicable law. We have jurisdiction under 28 U.S.C. § 1291 and review de novo the district court's grant of summary judgment for the defendants. *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006). "We may affirm on any basis supported by the record," *Fisher v. Kealoha*, 855 F.3d 1067, 1069 (9th Cir. 2017), and do affirm.

Section 7(a)(2) of the Endangered Species Act ("ESA" or the "Act") requires federal agencies to determine, in consultation with an appropriate agency (here, FWS), whether "any action [which they] authorize[], fund[], or carr[y] out" is "likely to jeopardize the continued existence of any endangered . . . or threatened species." 16 U.S.C. § 1536(a)(2); *see also W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1102, 1107–08 (9th Cir. 2006). Where an agency has previously acted and retains "discretionary . . . involvement or control over the action," the ESA's implementing regulations require the agency to reinitiate consultation with

FWS under certain circumstances. 50 C.F.R. § 402.16(a). These include where "the amount or extent of taking specified in the incidental take statement [accompanying the initial consultation] is exceeded" or "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered." *Id.* § 402.16(a)(1)–(2); *see* 16 U.S.C. § 1532(19) (defining "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct").

Here, it is undisputed that grizzly bears are a threatened species. *See Grizzly Bear (*Ursus Arctos Horribilis*)*, U.S. Fish & Wildlife Serv.: Env't Conservation Online Sys., https://ecos.fws.gov/ecp/species/7642 (last visited June 7, 2024). What the parties *do* contest is whether the Forest Service's 1995 National Policy on the use of bear bait is "action" for ESA purposes and, if so, whether the Forest Service was obligated to re-initiate consultation with FWS once facts on the ground purportedly changed.

We assume without deciding that the National Policy is action within the meaning of the ESA. We further assume that the Federal Defendants' 2020 withdrawal of the consultation documents that preceded adoption of the National Policy *does not* preclude the plaintiffs from maintaining that new information compels re-consultation on the withdrawn documents. Nevertheless, we conclude

3

that the plaintiffs' "new information" is insufficient to support the relief that they seek.

The plaintiffs point to two new sources of information that they argue should have prompted reinitiation of consultation regarding the National Policy. First, the grizzly bear population has expanded in number and range since 1995 such that their territory now overlaps with areas where bear baiting is allowed. Second, "although in 1993 FWS deemed it a 'remote possibility' that grizzlies would be killed at bait stations, they have since been killed by hunters using bait in national forests in both Wyoming and in Idaho," but those events have not prompted renewed assessment by the Federal Defendants. We take each argument in turn.

1. The plaintiffs claim that "[c]ourts have appropriately held that significant changes in populations of ESA-listed species constitute 'new information' triggering the duty to reinitiate consultation" and that the recovery of the grizzly bear population since 1995 is such a change. They predicate this argument on a single, unpublished case from the District of Idaho, in which a listed species *declined* from more than 45,000 individuals to just over 8,000 between the time the National Marine Fisheries Service collected its data and when it issued its opinion. *Friends of the Clearwater v. U.S. Forest Serv.*, No. 20-CV-00322, 2021 WL 3408595, at *2, *6 (D. Idaho Aug. 4, 2021). But we have never held, nor do the

plaintiffs direct our attention to any case holding, that an *increase* in population requires re-consultation. We will not do so now.

    2. Next, the plaintiffs point to two grizzly bear killings in 2007 in national forests in Idaho and Wyoming related to black bear baiting and argue that the number killed "may be greater." However, they offer no criteria to determine what level of mortality would constitute "new information" requiring re-consultation, contending only that, since "none of these mortalities . . . [was] ever . . . part of consultation on the National Policy[,] they alone constitute new information." Although the plaintiffs point to FWS's 1993 Incidental Take Statement (ITS), their argument does not rest on the "taking" trigger of Section 402.16(a). They further explained at oral argument that they do not seek to enforce the ITS itself. Neither the ITS nor any other relevant source transforms a small number of takes more than 15 years ago into "new information" requiring re-consultation. We thus affirm.

    **AFFIRMED.**